1

2

3

4                                      UNITED STATES DISTRICT COURT

5

6                                      NORTHERN DISTRICT OF CALIFORNIA

7

8    KHN SOLUTIONS LLC,

9              Plaintiff,                              No. C 20-07414 WHA

10        v.

11   SHENZHEN CITY XUEWU FEIPING              **ORDER ON DEFAULT JUDGMENT**
     TRADING CO., LTD., a Chinese Company;
12   SHENZHEN YUANYUHAOHAN
     TECHNOLOGY CO., LTD., a Chinese
13   Company; SHENZHEN AIMASI
     ELECTRONIC CO., LTD., a Chinese
14   Company; ROFEER-US, a Chinese
     Company; ZONGHUI LI, an Individual;
15   GUANGZHOU CITY JIAN SHENG
     TRADING CO., LTD., a Chinese Company;
16   JINMEI GONG, an Individual; CHENGDU
     CITY XIANG JIN XIN COMMERCIAL &
17   TRADING CO., LTD., a Chinese Company;
     LIANDI CHEN, an Individual;
18   SHENZHEN CITY MENG QIAN HUA
     KAI TRADING CO., LTD., a Chinese
19   Company; MENGQIAN JIANG, an
     Individual;; HARBANS SINGH PALDA,
20   an Individual; RICHARD GAWEL, an
     Individual; DONGQING CHEN, an
21   Individual; DEBIAO PANG, an Individual;
     and DOES 1–50,
22
               Defendants.
23

24                                            **INTRODUCTION**

25        In this false-advertising action, plaintiff moves for a permanent injunction, which would

26   depart from the now-in-place interim injunction based on new information, and for entry of

27   default judgment.  For reasons and to the extent below, the motion is granted in part and denied

28   in part.

**STATEMENT**

**1.    THE CLAIMS AND PROCEDURE PROMPTING INTERIM RELIEF.**

Plaintiff KHN Solutions LLC makes blood-alcohol concentration breathalyzers (2d Amd. Compl. ¶¶ 44–48).  Defendants make breathalyzers, too — but theirs don't work and are popularized by fake reviews and false quality assurances on www.amazon.com (*see id.* ¶¶ 1–8, 12–39).  So, plaintiff brought false-advertising claims under federal and state law (*id.* ¶¶ 87–108).

The magistrate judge overseeing the case ultimately granted alternative service via email (*see* Dkt. No. 108 ("Interim Order") at 2).  Defendants did not appear.  Then, lacking defendants' consent to decide the case, the magistrate judge recommended to the district judge that default judgment be entered (Dkt. No. 102; *see* Dkt. No. 101 ("1st KHN Br.")).  Because the recommended injunction burdened a third party, Amazon.com, Inc. (Dkt. No. 101-2), the district judge asked Amazon to show cause why the injunction should not be entered (Dkt. No. 105).  (Note that Amazon.com, Inc. is a non-party filer in this action (Dkt. Nos. 98, 106, 110), as is Amazon.com Services, LLC (Dkt. No. 84), represented herein by Attorney Arthur Kats of Davis Wright Tremaine LLP; this order refers to both corporate entities as Amazon, and to the retail platform through which defendants' products have been sold as www.amazon.com.)

In response, Amazon pointed to problems with the proposed injunction.  Ultimately, plaintiff *joined* Amazon in requesting changes to the proposed injunction, agreeing that it now saw the unresolved problems and furthermore agreeing on how best to solve them by modifying the proposed injunction (Dkt. No. 106 § II ("Prior Proposed Inj.")).

This prompted the district judge to take a fresh look at the contemplated relief, turning up more problems.  Nonetheless, plaintiff needed relief (Interim Order 8–9).  Plaintiff had asserted allegations and produced some evidence that some defendants were selling an important safety product — a breathalyzer — that simply did not work.  Defendants were profiting from American markets by diverting at least some sales from plaintiff (and endangering consumers) while avoiding accountability in American courts.

1     Thus, to smoke out defendants, an order granted interim relief to disable the sellers'

2     accounts on Amazon's platform and to impound revenues accrued from selling the specific

3     breathalyzer that the supporting evidence showed was clearly defective.  The relief was

4     "designed to prompt defendants to appear to defend their conduct so that we c[ould] reach a

5     decision on the merits. [If] defendants fail[ed] to appear as ordered, this Court w[as to] invite

6     plaintiff to enter a renewed motion for default judgment" (*id.* at 10).

7          **2.    THE EFFECT OF INTERIM RELIEF.**

8          Plaintiff served defendants using the approved alternatives (*see* Dkt. No. 112 ("2d KHN

9     Br.") at 1).  Amazon disabled the sellers' accounts and sent additional, voluntary notices to the

10    sellers using its own methods (Dkt. No. 110).

11         Plaintiff soon received an email asking that the injunction be dissolved as to one enjoined

12    seller account (2d KHN Br. 1 n.1) — an email that evolved into a motion on our docket.  The

13    email and motion came from a Florida-based lawyer representing two third parties who

14    claimed to sell only wigs, not breathalyzers, and who said they had been voluntarily dismissed

15    from this suit in 2023.  These third parties were the company Jinhua Kalu Wigs. Co., Ltd. and

16    the person Zhou Chan, apparently the company's owner and operator (collectively

17    "Wigs. Co.") (*see ibid.*; Dkt. No. 77 (prior dismissal); Dkt. No. 118 ("Wigs. Co. Br.")).

18    Because plaintiff admitted to the Court that it could not disprove this chain of purported facts

19    with certainty, plaintiff agreed to drop the Wigs. Co. seller account from the injunction

20    (Amazon Seller ID A3RBBHIOC0BOQY) (*see* 2d KHN Br. 1 n.1).

21         At a hearing on this interim request, the Court interrogated counsel for plaintiff and then

22    counsel for Wigs. Co. (*see* Dkt. No. 124).  It seemed to the Court that plaintiff's lawyers might

23    be seeking a quick payday by letting parties that showed up leave the suit while seeking

24    impoundment only as to those who failed to put up a fight.  It also seemed to the Court that

25    plaintiff's lawyers might not have sufficient documentation to merit default judgment if they

26    could not reliably trace specific offending sales to specific seller accounts to specific

27    defendants in our case.

28

United States District Court
Northern District of California

Plaintiff's counsel said none of this was so.  To avoid even the appearance of seeking a payday, plaintiff's counsel agreed to drop any damages from the proposed final relief.  Indeed, plaintiff's counsel represented that the interim injunction in fact had failed to impound funds in the sellers' accounts at all because all funds had left those accounts sometime after this litigation began but before the interim injunction (*see* Dkt. No. 124).  What mattered most to the plaintiff client was enjoining sales of the cheap but defective breathalyzer.  And, to that point, counsel produced *in camera* the records it had used to perform its tracing.  It now seemed Wigs. Co. had been wrongly ensnared as a defendant from the start despite having made no sales of the offending product, and that after Wigs. Co. was voluntarily dismissed a mistake by plaintiff's counsel resulted in the Wigs. Co. seller account number remaining lumped in with the seller account numbers of the others still in suit.

The Court pressed counsel to document end to end the exact links between problematic sales and the defendants and to pare down the proposed injunction accordingly in order to prevent mistake and to provide only the most robustly supported relief (*e.g.*, Dkt. No. 123).

### 3.    THE PARED-DOWN, PROPOSED PERMANENT INJUNCTION.

Plaintiff submitted a freshly proposed injunction and default judgment (Dkt. No. 125 ("Proposed Inj.")).  Its scope was pared down.  And, its support was shored up by supplementary briefing and evidentiary submissions that tried to link the offending sales to the seller accounts to the defendants in our case (Dkt. No. 129).

This proposal remains the one at issue in this motion.  It nearly resolves the problems earlier identified, through these critical changes:

> 1. ***Now only one*** *identified product — not three — is to be enjoined from being sold*, this product being the only breathalyzer for which specific record evidence shows false advertising *and* defective performance (*compare* Prior Proposed Inj. ¶ a.ii, *with* Proposed Inj. ¶ 3);
>
> 2. ***Now no*** *websites other than www.amazon.com are to stop all advertising and sales of the identified product*, eliminating the concern that the list of websites was open-ended and broader than the allegations of false advertising specific to www.amazon.com (*compare* Prior Proposed Inj. ¶ c, *with* Proposed Inj. ¶ 3).

4

3. ***Now no*** *sellers' accounts on www.amazon.com — not eleven as before — are to be disabled*, eliminating the concern that no reason had been given for preventing sellers accounts from advertising or selling other products besides the one at issue (*compare* Prior Proposed Inj. ¶ a.i, *with* Proposed Inj.)

4. ***Now no*** *stockpiles of the identified product will be seized and shipped to plaintiff from Amazon* — nor will products be seized at custom houses — eliminating the concern that plaintiff would gain a windfall of defendants' products (even if defective) (*compare* Prior Proposed Inj. ¶ a.iii, *and* Dkt. No. 112-3 ¶¶ 6.e–f, *with* Proposed Inj.).

5. ***Now no*** *damages will be awarded based on the Amazon sellers' revenues from selling products* — eliminating the concern that plaintiff would gain a windfall of defendants' revenues from other products or from the product at issue without regard to defendants' costs (or, if calculated another way, without regard to plaintiff's actual diverted sales) (*compare* Dkt. No. 112-3 ¶ 7, *with* Proposed Inj.).

The specific type of breathalyzer proposed to be enjoined is now, in short, the one supported by specific allegations in the complaint and specific documentary evidence since then, which was sold through the Amazon Standard Identification Number (ASIN) B07ZH6PVD4 (*see also* Interim Order 3–5). This is referred to here as the "Defective Rofeer Breathalyzer."

However, while these proposed changes resolve most issues, they do not resolve all. The appearance of Wigs. Co. raises a problem they do not yet solve: How can we be sure that the specific product's sales have been properly matched to specific selling accounts and then to the specific defendants named? Plaintiff believes we are sure, or that it should not matter so much. Yes, because no seller account is proposed to be enjoined, there would be no risk of enjoining the wrong one. And, because no damages are proposed, any judgment against the wrong defendant at least would not cost that defendant as much or at all. But it is no small thing for a federal court to adjudge one party of having violated another's legal rights, and the entire purpose of the proposed injunction is to alter the course of defendant's economic activity.

So, to get to the bottom of these outstanding concerns, the district court examined each link in the chain from the alleged conduct to each named defendant. This exercise revealed that there remained gaps in the allegations and in the supplementary evidence. The Court asked for further information (Dkt. No. 126). Plaintiff has provided it (Dkt. Nos. 128, 129).

United States District Court
Northern District of California

The most recent supplemental filing reveals information that should have been revealed much sooner. From this submission and our broader record, the following groupings of defendants are discernable:

> **i. "Manufacturers"**: These are alleged manufacturers of Defective Rofeer Breathalyzers, identified through public information about the companies (i.e., corporate defendants Rofeer-US; Shenzhen Yuanyuhaohan Technology Co., Ltd.; and Shenzhen Aimasi Electronic Co., Ltd. (d/b/a EEK Electronic));

> **ii. "Direct Sellers"**: These are alleged owners of Amazon seller accounts that have made sales of the Defective Rofeer Breathalyzer, identified via sales records provided by Amazon (i.e., individual defendants Dongqing Chen, Debiao Pang, Mengqian Jiang, Liandi Chen, Jinmei Gong, and Zonghui Li, and corporate defendants — some owned or operated by the just-mentioned individual(s) — Shenzhen City Meng Qian Hua Kai Trading Co., Ltd.; Chengdu City Xiang Jin Xin Commercial & Trading Co., Ltd.; Guangzhou City Jian Sheng Trading Co., Ltd.; and, Shenzhen City Xuewu Feiping Trading Co., Ltd.);

> **iii. "Possibly Related Sellers"**: These are identified owners of Amazon seller accounts that have made sales of another Rofeer breathalyzer, ASIN B08CZBL7YS (the "Possibly Functional Rofeer Breathalyzer"), and who share location or other contact information with a Direct Seller (i.e., Harbans Singh Palda and Richard Gawel, the latter operating "R&Gawel Baseball Equip. Store");

> **iv. "Anonymous Possibly Related Seller"**: This is an anonymous owner of an Amazon seller account that otherwise matches the criteria set out above in (this one being Amazon Seller ID A3TSEFWV73YTBM; note that this defendant was not named specifically as a Doe defendant).

> **v. "Unrelated Parties"**: This category is limited to Wigs. Co.

Plaintiff at first had treated all the above alike. Plaintiff still wishes the Court would treat groups (i)–(iv) alike. However, the situations for these defendants are distinct, particularly for groups (iii)–(v). Accordingly, this order will address the distinctions between the defendant groups when assessing the merits of granting default judgment in favor of plaintiff, undertaking this assessment as against each cohort of defendants.

At the outset, however, it is easy enough to dispense now with any default judgment and injunction as against the sets of parties identified in the ultimate and penultimate groups: (v) Wigs. Co., which already had been dismissed from this action but wrongly ensnared in the

interim injunction, and (iv) the anonymous owner and operator of the account having Amazon Seller ID A3TSEFWV73YTBM, about whom there are no allegations in the complaint. Because neither of these proposed parties defaulted and neither was named as defendant to be adjudged in the proposed final judgment, for avoidance of doubt this order simply **DENIES AS MOOT** any relief as against them.  (Also for avoidance of doubt, this does not discharge any named defendant, that is, if it turns out the anonymous owner is in fact a named defendant.) We move on to everyone else.

This order follows notice to defendants via alternative service (*see* Dkt. Nos. 109, 110, 112).  It follows notice to affected parties via the operation of the interim relief.  And, it follows notice and opportunity to be heard — and proposed changes to relief — from third party Amazon (*see* Dkt. No. 106), an ECF-registered non-party participant receiving filings in this action.  This order accepts the operative complaint's allegations and the magistrate judge's findings except to the extent reconsidered by the interim order or here.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

# ANALYSIS

## 1.    JURISDICTION.

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Here, the district court's subject-matter jurisdiction over these false advertising claims is obvious.  *See* 28 U.S.C. §§ 1331, § 1367(a).  This order turns to confirm that defendants received service of process and are rightly subject to the Court's jurisdiction.

### A.    SERVICE OF PROCESS.

Recall that plaintiff had identified addresses through Amazon, trademark registries, and corporate registries; tested those addresses using mailings and private investigators, including in China; and finally identified and tested email addresses (*see* Dkt. Nos. 23, 60, 74 (citing sworn declarations)).  The magistrate judge determined that defendants' listed addresses were false or defunct (one was for a fast-food joint in China), and thus that defendants' addresses

United States District Court
Northern District of California

7

were not known.  Accordingly, the magistrate judge found that ordinary service was not possible, that the Hague Convention did not apply, and that the tested email addresses were adequate alternatives.  Still, the recent appearance of Wigs. Co. suggested that contact information obtained from Amazon, corporate directories, or otherwise might have been imperfect.  Does that mean service was inadequate?  No.

"[T]he method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016–17 (9th Cir. 2002) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Here, the evidence from in-person investigations of the addresses associated with defendants supports that defendants "structured [their] business[es] such that [they] could be contacted *only* via [their] email address[es]."  *See id.* at 1018.  And, "when faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email [is likely to] be the only means of effecting service of process."  *Ibid.*

Also, while the appearance of Wigs. Co. is a new circumstance, it is not one that requires any further step to effect reasonable notice for the remaining defendants.  It is true that Wigs. Co. showed up only once the interim injunction was entered and not before, and that any insight gleaned from this happenstance could be relevant to understanding whether and to what extent other defendants received adequate notice.  But this only underscores it is likely they did receive actual notice.  For one thing, the eventual appearance of Wigs. Co. is consistent *equally* with Wigs. Co. not getting email notices *as* with getting them but choosing not to respond until enjoined.  Moreover, showing up indicates that the interim injunction was itself a form of notice for those affected by the injunction.  So, this is not a situation where we know notice has failed and must consider further steps to effect it.  *See United States v. Rivera-Valdes*, 157 F.4th 978, 986–87 (9th Cir. 2025) (en banc).  Defendants have received reasonably calculated notice.  *See, e.g.*, *Rio Props., Inc.*, 284 F.3d at 1013, 1015–16 & n.4, 1018–19; *Goes Int'l, AB v. Dodur Ltd.*, No. 14-cv-5666 LB, 2015 WL 1743393, at *3 (N.D. Cal. Apr. 16, 2015)

8

1    (Judge Laurel Beeler) (finding similarly); *see also* Hague Service Convention art. I, Nov. 15,

2    1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (inapplicable where physical address unknown).

3         Default was entered as to all defendants (Dkt. Nos. 72, 80).

4                    **B.    PERSONAL JURISDICTION.**

5         The operative complaint alleged generally that each defendant, via www.amazon.com,

6    "has sold" and "export[ed] goods to customers in the Northern District of California" (2d Amd.

7    Compl. ¶¶ 12–29, 41–42).  Recall that plaintiff identified the Manufacturers and Direct Sellers

8    by scouring corporate directories and www.amazon.com, and even by serving court-ordered

9    discovery requests upon Amazon (*see* Dkt. Nos. 12, 13, 23).  Is there a basis for the Court to

10    assert personal jurisdiction over these defendants in California?

11         State law determines the scope of personal jurisdiction here, since the federal statute at

12    issue — the Lanham Act — lacks any provision.  *Yahoo! Inc. v. La Ligue Contre Le Racisme*

13    *Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (per curiam).  (Also, while

14    the Lanham Act does not apply extraterritorially, those are limits on the merits of the claims —

15    not on the jurisdiction to hear them.  *See Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 968 (9th

16    Cir. 2016), *abrogated on other grounds by Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600

17    U.S. 412, 415 (2023).)  And, California's long-arm statute extends as far as due process allows.

18    CAL. CIV. PRO. CODE § 410.10.  This reduces our inquiry to whether asserting specific

19    jurisdiction over the defendants (none at home here) comports with due process, using these

20    familiar prongs:

21              (1) The non-resident defendant must purposefully direct his
22              activities . . . [to] the forum . . . ;

23              (2) the claim must be one which arises out of or relates to the
              defendant's forum-related activities; and

24              (3) the exercise of jurisdiction must comport with fair play and
25              substantial justice, i.e.[,] it must be reasonable.

26    *Shwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v.*

27    *Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

28

United States District Court
Northern District of California

1    *The first prong* examines the purposeful direction of the tort-like conduct.  *Herbal*

2    *Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090–91 (9th Cir. 2023) (citing *Calder v.*

3    *Jones*, 465 U.S. 783 (1984)).  Here, defendants readily "committed an intentional act,

4    expressly aimed at the forum state, causing harm that the defendant[s] kn[ew] [wa]s likely to

5    be suffered in the forum state."  *Ibid.* (numerals omitted) (ultimately quoting *Schwarzenegger*,

6    374 F.3d at 803).  That is because they allegedly knowingly manufactured and/or sold a

7    product that from the start was defective and imprinted with false certifications relevant

8    primarily or only to the U.S. market (false "FCC" and "FDA" certifications) and at the finish

9    was sold "via an interactive website" for "deliver[y] to the forum" (*see* 2d Amd. Compl. ¶¶ 1–

10    9, 35–37, 41).  *Cf. id.* at 1095.

11    *The second prong* asks whether plaintiff's claimed injuries are at least "related to" if not

12    "caused by" this conduct.  In essence, plaintiff claims that at least some of the duped

13    consumers who purchased cheap but defective breathalyzers from defendants would have

14    purchased pricier but effective breathalyzers from plaintiff if the cheap ones had not been

15    imprinted with false certifications and falsely advertised as effective.  These alleged injuries

16    are related to the complained-of conduct and suffice in this posture for jurisdictional purposes.

17    *Cf. id.* at 1096.  (Plaintiff also asserts that consumers' bad experiences with one

18    breathalyzer — sometimes broadcast as complaints to other consumers about the category of

19    personal breathalyzers writ large — also depresses purchases of plaintiff's breathalyzers.  This

20    theory is more attenuated and this order does not rely on this theory.)

21    *The final prong* concerns fairness, and asks whether defendants have "'present[ed] a

22    compelling case' that the exercise of jurisdiction would not be reasonable."  *Ibid.* (quoting

23    *Schwarzenegger*, 374 F.3d at 802).  Defendants have not appeared.  They allegedly profited

24    from California consumers' misfortunes (and by diverting plaintiff's sales) while evading

25    California legal action.  Asserting jurisdiction is fair and will keep things on a level.  *See id.* at

26    1096–97; *Rio Props.*, 284 F.3d at 1021.

27

28

United States District Court
Northern District of California

2.    **ENTITLEMENT TO JUDGMENT UNDER *EITEL*.**

Default judgment is disfavored.  It is warranted only if the possible harm to a plaintiff from denying meritorious relief clearly outweighs the possible harm to a defendant from granting mistaken relief — this balancing performed by weighing factors in one direction or the other under *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).  This order groups those factors to consider *first* the strength of plaintiff's claims and any prejudice to plaintiff if the claims go undecided, and *second* the reasonableness of defendants' failures to appear and any prejudice to defendants if the claims get decided without defendants present.[1]

### A.    *STRENGTH OF PLAINTIFF'S CLAIMS.*

Plaintiff primarily alleges false advertising under the Lanham Act.  And, although plaintiff asserts the claims the same way against all defendants, this order addresses them against each cohort in turn.

### (i)    *Against Direct Sellers.*

Plaintiff has a strong claim that the Direct Sellers falsely advertised the Defective Rofeer Breathalyzer on www.amazon.com, injuring plaintiff.  A plaintiff must show the following to prove a primary violation of false advertising:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

---

[1]  This effectively groups the first three factors, then the last four factors, of the total seven:
> (1) the possibility of prejudice to the plaintiff [from denying meritorious relief], (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

1    *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  (For reasons

2    like the ones just set out with respect to jurisdiction, plaintiff's asserted injury from

3    defendants' misrepresentations suffices for standing.)

4        *First*, the Direct Sellers sold this breathalyzer through the product pages that touted the

5    product could accurately measure blood-alcohol content.  Testing revealed it could not (2d

6    Amd. Compl. ¶¶ 62–67 (disproving quality by testing)).  Relatedly, the www.amazon.com

7    product pages contained pictures of the product embedded with purported government

8    certifications from the FCC and the FDA, which text on the pages also touted — while the

9    product in fact lacked any such actual certification(s) (*see id.* ¶¶ 68–77).  Those pages also

10   included fake reviews (*id.* ¶¶ 49–61 (uncovering review solicitation and suppression)).

11       *Second*, the complaint points to evidence of consumers reporting their own deception in

12   negative reviews (*see, e.g., id.* ¶ 51).  The exemplary reviews imply that consumers had

13   believed the breathalyzer would work when they purchased it but learned it did not work when

14   they tried it.  Why didn't early consumers' negative reviews cure the problem for later

15   consumers?  The complaint points to evidence of a campaign to flood the product reviews with

16   fake, positive ones while burying the bad ones by bribing consumers to remove those, too.

17       *Third*, the core false statements were plainly material because the product had and has

18   one function — measure blood-alcohol content — and the statements that it could perform that

19   function were false.  And, the presence of false government markings and of fake positive

20   reviews were material, too, if to a lesser extent.  Whereas a cheap but functional breathalyzer

21   might have seemed too good to be true to some consumers, the presence of government

22   markings and of so many five-star reviews made the core misrepresentation palatable.  Some

23   of the exemplary reviews explain this kind of effect in their own words.

24       *Fourth*, the false statements were adopted if not instigated by these defendants.

25       True, the complaint is not clear as to who drafted the text and who selected the images

26   and who manipulated the reviews on the product pages for the Defective Rofeer Breathalyzer.

27   Instead, the complaint in conclusory fashion implies that it was any and all the defendants alike

28   who did so:  They were in cahoots.  But that fails to explain the who, what, where, when, and

1    how required even under Rule 9(b).  It is possible that one vendor created the product page,

2    while other vendors merely elected to be sellers of the product displayed on the product page.

3        That said, this order relies on what is clear:  There was a vast gulf between what these

4    product pages promised about the breathalyzer and its real capabilities; there was extreme

5    dissatisfaction from consumers who purchased these breathalyzers from these product pages;

6    this resulted in complaints and negative reviews observed by the sellers on those pages.

7    Finally, the Direct Sellers sold this product through these product pages.  The combination of

8    the allegations and the supporting evidence of sales makes plain that defendant Direct Sellers

9    at the very least acquired knowledge of the product's defectiveness yet continued to adopt the

10   false statements on the product pages by electing to sell the product through them.

11       *Finally*, the plaintiff is likely to be injured (and has been).  Plaintiff competes with Rofeer

12   Breathalyzers.  That is, consumers looking for breathalyzers can choose from among options

13   that include plaintiff's products and the one defendants sell, the Defective Rofeer Breathalyzer.

14   Some consumers buy the latter because it is cheap and said to be effective, but few or none

15   would buy it if they knew it did not work at all.  And, some of those would purchase (or would

16   have purchased) a breathalyzer from plaintiff instead.  Thus, defendants' false advertising

17   diverts some sales from plaintiff.  This order does not rely on the more attenuated theory that

18   defendant's false advertising undercuts consumer confidence in the entire product category of

19   personal breathalyzers.

20       The merits of plaintiff's claims are therefore strong as against the Direct Sellers.

21                    ***(ii)    Against Manufacturers.***

22       Plaintiff also asserts the same claims the same way against the defendants involved in the

23   manufacture of the Defective Rofeer Breathalyzer.  Plaintiff also has a strong case here, though

24   this order does not rely only on plaintiff's reasoning.

25       At the threshold, the Lanham Act applies only to false advertising in connection with the

26   sale of goods and services in the United States.  Merely making a product abroad that happens

27   to be falsely advertised downstream in domestic sales is not enough for liability to attach to the

28   foreign manufacturer.  *Cf. Trader Joe's*, 835 F.3d at 968; *Abitron Austria GmbH*, 600 U.S. at

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    415.  Here, the conduct to be enjoined is domestic, and there are at least two theories for how

2    defendant manufacturers abroad are liable for it.  They are liable for it at least under the

3    second.

4            *First*, the manufacturers would be directly liable for false advertising if they themselves

5    created the product pages on www.amazon.com or otherwise adopted the statements there.

6    The distinction between Manufacturers and Direct Sellers would therefore collapse.  And, the

7    Manufacturers would be liable for all the reasons above.  Plaintiff asserts this is so.  But the

8    pleadings and evidence lack the specificity that Rule 9(b) requires.

9            *Second*, the manufacturers would be contributorily liable for that same false advertising if

10   they either intentionally induced the primary violation or else continued to supply the product

11   to the primary violator while knowing the violator to be falsely advertising the product.  *In re*

12   *Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1083 (S.D. Cal. 2020) (Judge Gonzalo P. Curiel)

13   (collecting district court cases in our circuit and adopting reasoning of *Duty Free Ams., Inc. v.*

14   *Estee Lauder Cos.*, 797 F.3d 1248, 1275 (11th Cir. 2015)); *cf. Perfect 10, Inc. v. Visa Int'l*

15   *Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (standard for contributory trademark

16   infringement).  Here, liability attaches at least on this second theory.  *For one thing*, the

17   product is imprinted with false certifications purporting to be from U.S. regulators.  This

18   supports an intent to deceive consumers in the United States familiar with those certifications.

19   The obvious purpose of imprinting purported but nonexistent government certifications is to

20   shore up consumer confidence that the breathalyzer works as advertised.  *For another thing*,

21   the circumstances already set out above as to the extreme consumer dissatisfaction leading to

22   complaints on the product pages, attempted returns, and the like makes implausible that these

23   manufacturing defendants could continue to supply products to vendors selling through the

24   www.amazon.com product pages without becoming aware that the products were being falsely

25   advertised.  As alleged and so far evidenced, the manufacturers therefore knew its products

26   were being falsely advertised but continued to push its products through those sales channels.

27

28

14

1

### (iii)    *Against Possibly Related Sellers?*

Plaintiff also asserts the same claims the same way against still other defendants but these were only possibly involved in the false advertising and sale of the Defective Rofeer Breathalyzer — the Possibly Related Sellers. Plaintiff's claims fail as against them.

The operative complaint alleges conclusory and contradictory facts respecting the Possibly Related Sellers, Richard Grewal and Harbans Singh Palda (*see* 2d Amd. Compl. ¶¶ 18–19, 26–27, 30, 36). The gist of these allegations is that these two defendants may be real people or they may be fake people and mere aliases of other people but either way they must be part of a conspiracy to falsely advertise the Defective Rofeer Breathalyzer and so should be enjoined. But the specific allegations and record evidence so far establish only that, *first*, these defendants share basic contact information with other defendants (Direct Sellers) while having separate seller accounts, and that, *second*, they have sold only the Possibly Functional Rofeer Breathalyzer but not the Defective Rofeer Breathalyzer. Both provide tenuous links to the violations here and fail to survive even Rule 9(b), which applies when considering a Rule 55 default judgment. *See Empire Fire & Marine Ins. Co. v. Poghosyan*, No. 2:23-CV-02403-SPG-MAR, 2024 WL 4403736, at *5 (C.D. Cal. June 27, 2024) (Judge Sherilyn Peace Garnett) (collecting cases including *In re Kubick*, 171 B.R. 658, 661 (B.A.P. 9th Cir. 1994)). These theories fail.

*First*, conspiracy by colocation fails. We cannot assume that every business sharing an address and phone number while selling a common class of products (or even a single brand of products) is in cahoots with the worst wrongdoer that happens to be operating at that location, through that business agent, or in a similar fashion. By that logic, every Tupperware saleswoman selling every type of Tupperware would be liable for the worst acts of the least honest Tupperware saleswoman selling the least effective line of Tupperware even if the salespeople were in fact independent businesses so long as they at least listed a common office address or business agent (or take your pick of other common scenarios in commerce — from fish mongers at fish markets, to startups in co-working studios). Plaintiff perhaps could have

United States District Court
Northern District of California

1    mounted more specific allegations and evidence regarding the who, what, where, when, and

2    how of this conspiracy.  Plaintiff failed to do so.

3        *Second*, and similarly, every product made by a company is not defective simply because

4    one product made by that company is defective.  The Possibly Related Sellers did not sell the

5    Defective Rofeer Breathalyzer using the ASIN associated with that breathalyzer (the 'VD4

6    ASIN), if at all.  Nonetheless, plaintiff contends that these sellers did sell some kind of

7    defective Rofeer breathalyzer *either* because the Defective Rofeer Breathalyzer was also sold

8    under this other ASIN (the '7YS ASIN), or *else* because a distinct but equally defective

9    breathalyzer was sold under this ASIN (again, the '7YS one).  Plaintiff also points out that

10   these facts would be consistent with a conspiracy by defendants to evade accountability in a

11   case just like this one that attacks a single ASIN.  Plaintiff might be right.  But this suit attacks

12   a single ASIN (the 'VD4 one) because that is the limit of the specificity in the allegations and

13   in the record evidence so far produced.  It is plausible, for instance, that some other Rofeer-

14   branded breathalyzers are imprinted with FCC and FDA certifications and/or are defunct.  But

15   no allegation was made and no evidence provided that the Possibly Functional Rofeer

16   Breathalyzer (the '7YS one) sold by the Possibly Related Sellers had those demerits, much less

17   that all Rofeer Breathalyzers do.  For all we know, the Possibly Functional Rofeer Breathalyzer

18   *is* functional and its sellers elected to sell it for *that* reason.  A federal district court cannot

19   grant judgment on a claim based upon guilt by association, then grant a roving injunction to

20   stop whatever is associated next — which seems to be what plaintiff hoped to achieve.

21   Plaintiff bore the burden of spotting the wrongdoing with more specificity.  Plaintiff failed.

22       These problems also drag down the related state law claims as to these two defendants.

23       So, as to these defendants, there is no point in prolonging the result:  The motion for

24   judgment against defendants Harbans Singh Palda and Richard Gawel is **DENIED**, and the

25   claims against them **DISMISSED**.  Recall the operative complaint alleges these two defendants

26   may be mere aliases of some other defendant in this case.  If so, there can be no prejudice to

27   plaintiff at all from denying judgment against persons who do not exist.  If not, there also is no

28

United States District Court
Northern District of California

1  basis to grant judgment.  (To this point, however, the orders in this paragraph do not extend to

2  deny the motion for default judgment as against any named defendant still in this action.)

3                              *              *              *

4            Because the federal claim for false advertising is met as to the Manufacturers and the

5  Direct Sellers, the analogous state claim under California Business and Professions Code

6  Section 17500 is also met (2d Amd. Compl. ¶¶ 87–96, 97–102).  *See Kwan Software Eng'g,*

7  *Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2014 WL 572290, at *3 (N.D. Cal. Feb. 11,

8  2014) (Judge Susan Illston); *cf. Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28

9  F.4th 35, 38 n.1 (9th Cir. 2022); *see also POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S.

10  102, 107 (2014).

11          And, for the same reason, the operative complaint's final claim for *unlawful* competition

12  under California Business and Professions Code Section 17200 is also met as against the

13  Manufacturers and Direct Sellers — this being triggered at least by the violation of the Lanham

14  Act (*see* 2d Amd. Compl. ¶¶ 103–08).  *Lona's Lil Eats, LLC v. DoorDash, Inc.*, No. 20-cv-

15  06703-TSH, 2021 WL 151978, at *13 (N.D. Cal. Jan. 18, 2021) (Judge Thomas Hixson).  This

16  order need not reach other alleged predicates for an unlawful competition claim — those being

17  purported violations of the Federal Food, Drug, and Cosmetic Act and of the Federal Fair

18  Packaging and Labeling Act (*e.g.*, 2d Amd. Compl. ¶ 105).  (Also, while those purported

19  violations were raised as alternative predicates, they were not raised as independent claims for

20  relief requiring resolution on the merits.)

21                              *      *      *

22          This order finds plaintiff has buttressed its allegations with sworn declarations and

23  discovery in order to present claims that in this posture appear strongly meritorious against the

24  Manufacturers and the Direct Sellers (but not against the Possibly Related Sellers).  Also,

25  plaintiff alleged that defendants' false advertising diverted sales from it but never presented a

26  robust accounting of such diversion; this order recognizes, however, that a robust accounting

27  might not have been entirely possible without access to discovery directly from defendants.

28  The threat of prejudice to plaintiff if default judgment is not entered thus still favors plaintiff.

United States District Court
Northern District of California

17

**B.    UNREASONABLENESS OF DEFENDANTS' FAILURES TO APPEAR.**

Defendants' failure to appear did not result from excusable neglect.  The relevant seller accounts were identified by exhaustive efforts by Amazon and plaintiff.  And, the corporate entities, physical addresses, and email addresses associated with those accounts were from all we can see provided by the sellers themselves to Amazon in the first instance.  No stone was left unturned in trying to reach those entities through those means as well as through other means besides.  Based on those efforts, an interim injunction was imposed, which operated to provide another means of notice.

And, if defendants were to appear, the chance they could gin up material disputes on the points above is nil.  We already have eliminated from the action (Wigs. Co.) or from default judgment (Possibly Related Sellers) the defendants for whom we have the least information connecting them to the conduct.  As for the other defendants (the Manufacturers and Direct Sellers), there is no reason to believe the corporate and sales records are unreliable.  Nor is there any reason to believe that plaintiff's testing of the Defective Rofeer Breathalyzer — which was sworn to use standard methods such as those used by the U.S. Customs and Border Patrol — is unreliable.  (Consumer complaints buttress the finding, too.)  Defendants might try to show that they did not contribute to and were entirely oblivious to the false statements on the selling pages, but defendants are all but certain to fail in that effort, also.

Finally, what vanishing risk remains of unjustified injury from default judgment is further mitigated by the way the proposed relief is narrowly tailored.  Again, some defendants have been removed altogether.  And, plaintiff dropped the damages award sought from $1,823,707 to $300,000 to *zero dollars* (*see* 2d KHN Br. 6; Proposed Inj.).  Any money at stake in enjoining future sales is likely modest, too, based on the prior submissions — perhaps totally $300,000 over some reasonably foreseeable period.  (Such gain, of course, would be ill got.)  At bottom, the proposed injunction simply prevents sellers from doing what would be unlawful in any case:  selling a knowingly defective breathalyzer bearing false certification markings.  Thus, this factor, too, favors default judgment.  *See, e.g.*, *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1095, 1100 (N.D. Cal. 2014) (Judge William H. Orrick).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### C.    BALANCING.

Resolution on the merits will not be possible in this case.  Defendants refuse to show up.
And, balancing the harm to plaintiff from not entering default judgment (Part A, above) against
the harm to defendant from entering it (Part B, above), the result is clear.  Default judgment is
warranted.

### 3.    PERMANENT INJUNCTION.

Recall that a motion for permanent injunction must be narrowly tailored to remedy the
legal violations found.  *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986).
That well-tailored injunction must meet the *eBay* standard, as adjusted by the Lanham Act's
Section 34(a), that is, by U.S. Code Section 1116(a).  *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th
995, 1005 (9th Cir. 2023) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), and
15 U.S.C. § 1116(a)).  The ordinary *eBay* standard requires that the movant show:

> (1) that it has suffered [or will suffer] an irreparable injury;
> (2) that remedies available at law, such as monetary
> damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the
> plaintiff and defendant, a remedy in equity is warranted;
> and (4) that the public interest would not be disserved by a
> permanent injunction.

*Ibid.* (quoting 547 U.S. at 391).  Section 1116(a) "adds a statutory layer to the irreparable harm
analysis," however, by "creating 'a rebuttable presumption of irreparable harm' when a
permanent injunction is sought to remedy" violations under the Act.  *Ibid.*

Reprising the analysis above, all four *eBay* factors favor entering a permanent injunction.
*First*, for injunctive relief purposes, plaintiff benefits from Section 1116(a)'s "rebuttable
presumption of irreparable harm upon a finding of a violation" of false advertising.  *Second*,
given we accept plaintiff's allegations as true in this posture, this order also finds plaintiff faces
ongoing harms that are not readily compensable by damages — in part because if diverted
sales are not enjoined in the first place these defendants in this very action have shown an
ability to abscond with money from the seller accounts and not appear to defend the claims or
pay damages in court.  *Third* and *fourth*, this order finds the balance of hardships and public

1    interests favors enjoining defendants — for reasons like those already given favoring entry of

2    default judgment.

3          Thus, the remaining task is to tailor the injunction to remedy the legal violations found.

4    Above, we established that plaintiff's second amended complaint demonstrated false

5    advertising and unlawful competition by way of false reviews, false assurances of quality, and

6    false certifications of FCC and FDA approval (including stamps on the product itself).  Recall

7    also that plaintiff's non-conclusory allegations showed these false statements were displayed to

8    mislead consumers on www.amazon.com.  Finally, recall that the interim order suggested

9    plaintiff went too far when proposing to shut off sellers' accounts altogether and to seize

10   various products.  *Cf. TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 830–31 (9th Cir.

11   2011) ("[P]ractices can and do change over time," so "permanent injunction can't burden

12   future truthful advertising.").

13         As a result, a permanent injunction is warranted, but tailored to enjoin the false

14   advertising of and falsely advertised sales of the Defective Rofeer Breathalyzer by the

15   Manufacturer Defendants and Direct Seller Defendants and those working actively with them.

16   The kinds of false advertising sufficiently proven up in this posture to warrant relief are — as

17   to the Defective Rofeer Breathalyzer only — the descriptions and depictions of any ability to

18   test blood-alcohol concentration (the product is not functional), any description or depiction of

19   FDA or FCC certification or endorsement (the certifications are phony), and any description or

20   depictions thereof that have been laundered into consumer reviews or press clippings (these

21   reviews themselves being at least mistaken if not knowingly false and in any case, for reasons

22   above, materially misleading to any who see them).

23         By stipulation of plaintiff and because the complaint and supporting materials cannot

24   substantiate an amount otherwise, there will be no monetary relief from defendants to plaintiff.

25   Any funds impounded by the interim relief will be released, although the amount of funds

26   impounded was said to have been zero all along.

27         The permanent relief will supersede the interim relief.  Any part of the interim relief

28   inconsistent with the permanent relief will dissolve and any part of the interim relief consistent

United States District Court
Northern District of California

20

with the permanent relief will merge into it.  So, the parallel motion seeking to dissolve or to amend the interim injunction (Dkt. No. 118 (overtaking Dkt. No. 117)) is **DENIED AS MOOT**.

The permanent injunction will be entered pursuant to this order but filed separately.  It will take effect upon service by plaintiff in accordance with approved methods of alternative service (where applicable).  Plaintiff **SHALL FILE** certification(s) of service onto the docket.

## CONCLUSION

The motion for entry of default judgment and permanent injunction (*see* Dkt. No. 112, 125) is **GRANTED IN PART AND DENIED IN PART** for the reasons and to the extent stated above. Plaintiff therefore is entitled to final judgment and entry of a permanent injunction against defendants Rofeer-US; Shenzhen Yuanyuhaohan Technology Co., Ltd.; Shenzhen Aimasi Electronic Co., Ltd.; Shenzhen City Meng Qian Hua Kai Trading Co., Ltd.; Mengqian Jiang; Chengdu City Xiang Jin Xin Commercial & Trading Co., Ltd.; Liandi Chen; Guangzhou City Jian Sheng Trading Co., Ltd.; Jinmei Gong; Shenzhen City Xuewu Feiping Trading Co., Ltd.; Zonghui Li; Dongqing Chen; and Debiao Pang.  Plaintiff is not entitled to damages, attorney's fees, or costs.

**IT IS SO ORDERED.**

Dated:  December 30, 2025.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

21

**APPENDIX**

| DEFENDANTS (*see also* Dkt. Nos. 56, 101-2, 109, 111-3) | Alt. Service (Dkt. Nos.) | | Service of Filings (Dkt. Nos.) | | Default (Dkt. Nos.) | | Select Information Connecting to False Ad. | |
|---|---|---|---|---|---|---|---|---|
| | Mot. | Grant | 2d Am. Com | Interim Order | Mot. | Grant | Sold on Amazon Using Seller ID | Sold Item[2] |
| **Direct Sellers of Defective Rofeer Breathalyzer, ASIN B07ZH6PVD4.** | | | | | | | | |
| Dongqing **Chen**, *An Individual* | 56 | 60 | 62 | 109 | 70 | 72 | A3P13DS4MH7GJH (Contact matched also via bank.) | 'VD4 |
| Debiao **Pang**, *An Individual* | 56 | 60 | 62 | 109 | 71 | 72 | AOMSZGCZMXRPN | 'VD4 |
| Shenzhen City **Meng** Qian Hua Kai Trading Co., Ltd., *A Chinese Company* | 56, 73 | 74 | 75 | 109 | 79 | 80 | A2IZ3ZXYTPTY23 | 'VD4 |
| Mengqian Jiang, *An Individual* | "" | "" | "" | "" | "" | "" | "" (Matched above by email and as sole owner via corp. records.) | 'VD4 |
| Chengdu City **Xiang** Jin Xin Commercial & Trading Co., Ltd., *A Chinese Co.** | 56, 73 | 74 | 75 | 109 | 79 | 80 | AAMUJL9WOHPQF | 'VD4 |
| Liandi **Chen**, *An Individual** | "" | "" | "" | "" | "" | "" | "" (Matched above by email and as sole owner via corp. records.) | 'VD4 |
| Guangzhou City **Jian** Sheng Trading Co., Ltd., *A Chinese Co.** | 56, 73 | 74 | 75 | 109 | 79 | 80 | A1TDNN0FBSQBQJ | 'VD4 |
| Jinmei **Gong**, *An Individual** | "" | "" | "" | "" | "" | "" | "" (Shared name, and email above.) | 'VD4 |
| Shenzhen City Xuewu **Feiping** Trading Co., Ltd., *A Chinese Company* ‡ | 19 | 23 | 57 | 109 | 64 | 72 | A1877UPA84I8J4 | 'VD4 |
| | | | | | | | ATR2J4371N1V8 | 'VD4 |

---

2   Sales can be found on at least one row of the table produced by Amazon (*see* Dkt. No. 129-2).

United States District Court
Northern District of California

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Zonghui** Li, *An Individual* ‡ | 56 | 60 | 62 | 109 | 67 | 72 | A1877UPA84I8J4 | 'VD4 |
| | | | | | | | ATR2J4371N1V8 (All shared name in email.) | 'VD4 |
| Possibly Related Seller; Sold Possibly Functional Rofeer Breathalyzer, ASIN B08CZBL7YS.[3] | | | | | | | | |
| Harbans Singh **Palda**, *An Individual*\* (¶ 26). | 56 | 60 | 62 | 109 | 68 | 72 | A2ZZC6TCCUOF9J | '7YS |
| Richard **Gawel**, *An Individual*\* (¶ 27) | 56 | 60 | 62 | 109 | 68 | 72 | A3SFQNENLP8NPT """. Alleged to run "R&Gawel Baseball Equip. Store." | '7YS |
| Anonymous Possibly Related Seller[4] | | | | | | | | |
| Anonymous ‡ | | | | 110 | | | A3TSEFWV73YTBM Shares location, phone with "‡"-designated sellers | '7YS |
| Unrelated Parties, Voluntarily Dismissed Without Prejudice | | | | | | | | |
| Jinhua Kalu Wigs. Co., Ltd., *A Chinese Company* | (Dkt. No. 77) | | | | | | A3RBBHIOC0BOQY | None |
| Zhou Chan, *An Individual* | """ | | | | | | """ | """ |
| Manufacturers and Owners | | | | | | | | |
| **ROFEER**-US, *An Unknown Company* (¶ 25) | 19 | 23 | 57 | 109 | 63 | 72 | Alleged manufacturer and user with others of seller accounts. | |
| Shenzhen **Yuanyuhaohan** Technology Co., Ltd., *A Chinese Company* | 19 | 23 | 57 | 109 | 63 | 72 | Alleged owner-manufacturer identified via U.S.-based website and U.S. trademark registry. | |
| Shenzhen **Aimasi** Electronic Co., Ltd. (or EEK Electronic), *A Chinese Company* | 19 | 23 | 57 | 109 | 66 | 72 | Alleged manufacturer. | |

---

[3]  Defendants marked "*" share a physical address that when tested was false (Dkt. No. 56 at 11).
[4]  Defendants marked "‡" share a physical address that when tested was false.

23